United States District Court
Western District of Michigan

| | |
|---|---|
| Al Jessup<br>    Plaintiff,<br>vs.<br>Nathan Olson (individually and in his official capacity), Ingham County, William Eberhardt (individually), Les Rochefort (individually), Ray Durham (individually), Peter Smith (individually), Confidential Informant #28068 (individually and in their official capacity), Other Unknown John or Jane Does (individually and in their official capacities),<br>    Defendants. | Case no:<br><br>Hon.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**Dustyn Coontz** (**P80102**)
Attorney for Al Jessup
1100 W. Saginaw St.
Suite 4A
Lansing, MI 48915
(517) 940-8004
dc@coontzlaw.com

## COMPLAINT

Al Jessup, through his attorney, Dustyn Coontz, appears and states the following:

## JURISDICTION

1. Under 28 U.S.C. § 1331, this Court has original jurisdiction to hear all claims "arising under the Constitution [or] laws . . . of the United States."

2. This complaint brings suit under 42 U.S.C. § 1983 and alleges violations of the U.S. Constitution.

3. Under 28 U.S.C. § 1367, this Court also has supplemental jurisdiction for "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."

4. This complaint also alleges violations of Michigan state law, but the facts supporting the state claims are the same facts supporting the federal claims.

## VENUE

5. Venue is proper both because at least one defendant resides in this District[1] and because the events "giving rise to the claim occurred" in this District.[2]

## PARTIES

6. Plaintiff, Al Jessup, resides at 1523 W. Rundle Ave. Lansing, MI 48910.

7. At all material times, defendant Nathan Olson was a deputy with the Ingham County Sheriff's Department who was acting individually and in his official capacity.

---

[1] 28 U.S.C. § 1391(b)(1); see also 28 U.S.C. § 1391(c)(2).
[2] 28 U.S.C. § 1391(b)(2).

3

8. At all material times, defendant Confidential Informant #28068's acted individually and in their official capacity as an agent of the Ingham County Sheriff's Department.

9. Ingham County is a political subdivision of Michigan located in the federal Western District of Michigan.

10. At all material times, William Eberhardt was employed by the Michigan State Police.

    a. While being sued in his individual capacity, Eberhardt was acting under color of state law as an employee of the Michigan State Police.

11. At all material times, Les Rochefort was employed by the Michigan State Police.

    a. While being sued in his individual capacity, Rochefort was acting under color of state law as an employee of the Michigan State Police.

12. At all material times, Peter Smith was employed by the Michigan State Police.

    a. While being sued in his individual capacity, Smith was acting under color of state law as an employee of the Michigan State Police.

13. At all material times, Ray Durham was employed by the Michigan State Police.

    a. While being sued in his individual capacity, Durham was acting under color of state law as an employee of the Michigan State Police.

14. Defendants Other Unknown John or Jane Does are law-enforcement officers whose names are not available to Al Jessup at the time of filing.

    a. Does employed by the Ingham County Sheriff's Department will be sued both personally and in their official capacities.

b. Does employed by the Michigan State Police will be sued personally.

## STATEMENT OF FACTS

### I. The First Controlled Buy (Buy #1)

15. On May 8, 2018, Ingham County Sheriff's Deputy Nathan Olson and Michigan State Police Detective Sergeant Ray Durham arranged a controlled buy of narcotics.

16. The buyer was the CI.

17. According to the CI, the seller was to be Al Jessup.

18. The CI lied about Al Jessup being the seller.

19. The buy was to occur at the St. Ides Village Food Market at 2118 W. Jolly Rd. Lansing, MI 48910.

20. Olson drove the CI to St. Ides in an undercover vehicle.

21. They observed a black Buick drive by, and the seller was in the passenger seat.

22. At the seller's request, the buy ended up occurring down the side street of Starr Ave.

23. The CI used $405 of prerecorded funds to buy what was later confirmed to be heroin and cocaine.

24. Olson claims that he positively identified Al Jessup by checking Jessup's image on file with the Michigan Secretary of State (SOS).

25. It is untrue that Jessup was positively identified because he was not the seller.

26. Unnamed officers (though they may potentially be already-named defendants in this action) followed the black Buick.

27. They observed a male driving the vehicle and a female in the passenger seat.

28. The vehicle was registered to a woman named Stephanie Duke.

**II. The Second Controlled Buy (Buy #2)**

29. On May 24, 2018, Durham and Olson arranged another controlled buy with the CI.

30. This one was to take place at Mario's Market, 6200 S. Martin Luther King Jr. Blvd. Lansing, MI 48911.

31. The CI called the person who was purported to be Al Jessup at (330) 775-4001 in front of Durham and Olson.

32. Jessup has never owned or used this phone number.

33. Again Olson took the CI in an undercover vehicle to the location of the deal.

34. This time the CI went inside the store to do the deal, exchanging $300 of prerecorded bills for some heroin (which also happened to contain some fentanyl).

35. This time the CI claims to have positively identified Jessup from his SOS image and from seeing him in person.

36. This was untrue because Al Jessup was not the person selling drugs.

37. Upon information and belief, no officer saw or identified the person purported to be Al Jessup.

38. Unnamed officers (though they may potentially be already-named defendants in this action) are both claimed to have been "unable to follow the suspect vehicle" and "were able to follow the suspect vehicle for a short distance" before terminating surveillance.

39. In this instance, the suspect vehicle was a silver Honda hatchback with no other identifying information.

40. It is unclear to Jessup at this time why the silver Honda was considered a suspect vehicle.

## II. After the Controlled Buys

41. On July 13, 2018, Tony Saucedo from Tri County Metro submitted the drugs from Buy #2 to the Michigan State Police Forensic Laboratory.

42. On July 25, 2018, forensic scientist Jeffrey Rosenthal confirmed that heroin and fentanyl were present.

43. Sometime later, Tri County Metro submitted the drugs from Buy #1.

44. The lab received those drugs on October 22, 2018.

45. On December 4, 2018, Rosenthal confirmed that one of them was heroin and the other was cocaine.

46. On February 7, 2019, the 54A District Court in Lansing authorized a felony complaint and arrest warrant against Al Jessup for his supposed role in these drug deals.

47. On May 27, 2019—over one year after Buy #2—Darren Dykens and other Lansing Police Department officers arrested Al Jessup at his home in the quiet Colonial Village neighborhood on the southside of Lansing.

48. On May 28, 2019, Jessup was arraigned on three 20-year felonies that carry the possibility of consecutive sentencing, prison guidelines, driver's license sanctions, and up to $25,000 in fines.

49. As a condition of release, Jessup had to wear a GPS tether around his ankle, which he was financially responsible for.

50. At his probable cause conference nine days later, the Ingham County Prosecutor's Office moved for nolle prosequi on all three charges.

51. The Honorable Louise Alderson granted the motion, dismissing the case against Jessup.

52. Because of his unlawful deprivation of liberty and the damage to his reputation among his neighbors, Al Jessup has suffered extreme emotional distress from his arrest and having to navigate the criminal-justice system.

## CLAIMS

53. Generally, the Fourteenth Amendment's Due Process Clause "incorporates" the Fourth Amendment in full.[3]

54. Fourth Amendment violations are therefore cognizable under 28 U.S.C. § 1983.

55. For all claims involving defendant Nathan Olson, Ingham County has *Monell* liability because those organizations' policies either allowed for an unreliable CI to be employed or allowed for Olson to work with an unreliable CI employed by the Michigan State Police.

## I. False Arrest Under the Fourth Amendment

56. The Fourth Amendment requires that warrants issue only upon probable cause.

57. The warrant issued for Al Jessup's arrest was not supported by probable cause.

58. Defendant Confidential Informant #28068 is responsible for Jessup's illegal arrest by lying to the police.60

---

[3] Wolf v. Colorado, 338 U.S. 25 (1949).

59. The remaining individual defendants are responsible for the illegal arrest by not ensuring they had probable cause before seeking an arrest warrant.

60. This is because the remaining defendants neither used a sufficiently reliable confidential informant nor sufficiently corroborated the CI's allegations.

## II. False Arrest Under Michigan Law

61. The allegations in paragraphs 56–60 also form the basis for the Michigan tort of false arrest, which requires that an arrest be (1) illegal and (2) unjustified because (3) the arrest not supported by probable cause.

62. Each defendant caused and is liable for this false arrest.

## III. False Imprisonment Under Michigan Law

63. Likewise, the allegations in paragraphs 56–60 form the basis for the distinct Michigan tort of false imprisonment, which requires intent

of confinement and an act that either directly or indirectly results in confinement that the plaintiff is aware of.

64. These elements are satisfied from Al Jessup's initial arrest all the way to his release on bond.

65. Indeed, wearing a GPS tether is also a deprivation of liberty amounting to confinement, and Jessup was forced to wear the tether until his case was dismissed nine days after being arraigned.

66. Each defendant caused and is liable for this false imprisonment.

## IV. Malicious Prosecution Under the Fourth Amendment

67. The Fourth Amendment prohibits unreasonable searches and seizures, including the right to be free from malicious prosecution.

68. Al Jessup was maliciously prosecuted under the Fourth Amendment because there was no probable cause for his prosecution, he suffered a deprivation of liberty beyond his initial arrest, and the charges against him were dropped.

69. For the reasons stated in paragraphs 56–60, each defendant in some way participated in and caused Jessup's malicious prosecution.

## V. Statutory Malicious Prosecution Under Michigan Law

70. Under M.C.L. 600.2907, "Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against."

71. Here, the CI stated that Al Jessup sold them drugs, when in fact it was someone else.

72. Whatever the CI's actual motives for the false accusations, they were certainly for purposes of vexation, trouble or malice.

73. Accordingly, the CI is liable to Jessup for statutory malicious prosecution.

## VI. Common Law Malicious Prosecution Under Michigan Law

74. Michigan common law allows for the tort of malicious prosecution when (1) the defendant(s) brought about the plaintiff's prosecution (2) without probable cause, (3) the case was dismissed, and (4) the defendants acted with malice or a primary purpose other than that of bringing the offender to justice.

75. Again, whatever the CI's actual motives for lying, bringing Al Jessup to justice cannot have been among them.

76. Accordingly, the CI is liable to Jessup for common-law malicious prosecution.

## VII. Intentional Infliction of Emotional Distress

77. Intentional infliction of emotional distress (IIED) occurs where a defendant engages in extreme and outrageous conduct that causes a plaintiff to suffer severe emotional distress.

78. IIED can be satisfied when a defendant either intends the extreme and outrageous conduct or is reckless in engaging in the conduct.

79. Here, Al Jessup has suffered severe emotional distress from being arrested in broad daylight in front of his neighbors and subsequently deprived of his liberty.

80. Because of his ordeal, Jessup has lost faith in the justice system and fears law enforcement.

81. This severe emotional distress is a direct result of defendant CI's lies.

82. Lying about criminal behavior, much less drug-dealing, is both extreme and outrageous.

83. The remaining individual defendants were reckless in relying on the CI.

84. This reckless reliance on a CI who has not proved to be reliable and whose claims were not corroborated directly resulted in Jessup's severe emotional distress.

85. Each defendant is liable to Al Jessup for either intentionally or recklessly causing his emotional distress.

## VIII. Invasion of Privacy: Intrusion

86. The tort of intrusion occurs when there is an unreasonable and highly offensive intrusion upon one's seclusion.

87. Al Jessup was wrongfully arrested (i.e., *unreasonably* seized) in his own home.

88. The CI's lies caused this.

89. So did the remaining defendants' unreasonable reliance on those lies.

90. Each defendant is liable for this intrusion into Al Jessup's seclusion.

## IX. Invasion of Privacy: False Light

91. The tort of false light occurs when a defendant knowingly or recklessly disregards a highly offensive false statement that is publicized and places the plaintiff in a false light in the public eye.

92. Here, the CI lied about Al Jessup being a drug dealer.

93. The remaining individual defendants recklessly disregarded whether that was true.

94. Al Jessup's charges were—and still are—publicized on the 54A District Court website.

95. Each defendant is responsible for Al Jessup being cast in a false light.

## X. Slander

96. Uttering false statements about someone being a criminal is defamation per se.[4]

97. The CI lied about Al Jessup being a drug dealer.

98. Again, Jessup has suffered emotional and reputational harm as a result.

---

[4] See MCL 600.2911.

99. The CI is liable for slander.

## REQUEST FOR RELIEF

100. Al Jessup requests actual and punitive damages for being unlawfully deprived of his liberty, suffering emotional distress, and having his reputation irreparably tarnished.

101. Al Jessup requests that all defendants be permanently enjoined from employing Confidential Informant #28068.

102. Al Jessup requests attorney's fees under 28 U.S.C. §1988 and MCL 600.2911.

## DEMAND FOR JURY TRIAL

103. Al Jessup demands a jury trial on all issues raised in this complaint.

March 8, 2021                              /s/ Dustyn K. Coontz
                                           Attorney for Al Jessup