UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AL JESSUP

     Plaintiff,

v.

NATHAN OLSON¸ (individually and in his
official capacity), INGHAM COUNTY,
WILLIAM EBERHARDT (individually), LES
ROCHEFORT (individually), RAY DURHAM
(individually), PETER SMITH (individually),
CONFIDENTIAL INFORMANT # 28068
(individually and in their official capacity),
OTHER UNKNOWN JOHN OR JANE DOES
(individually and in their official capacities)

     Defendants.

No. 21-cv-00232

HON. HALA Y. JARBOU

MAG. RAY KENT

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS EBERHARDT,
ROCHEFORT, DURHAM, AND SMITH'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**INDEX OF AUTHORITIES**                                                    iii

**CONCISE STATEMENT OF THE ISSUES PRESENTED**               iv

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**          v

**ARGUMENT**                                                                          1

**I.   THE COMPLAINT PRESENTS FAIR NOTICE OF THE CLAIMS
      AGAINST THE DEFENDANTS.**                                          1

    **A.  Investigators moved forward without investigating the veracity of the
      CI's claims.**                                                               1

    **B.  The controlled buys presented no information to lead investigators to
      independently identify any suspect.**                                2

**II.  DEPRIVATION OF JESSUP'S FOURTH AMENDMENT PROTECTION
      FROM UNLAWFUL ARREST.**                                          5

**III. DEFENDANTS ARE NOT QUALIFIED FOR QUALIFIED IMMUNITY.**
      7

**CONCLUSION**                                                                    9

# INDEX OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)                                           5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)                                       5, 1, 4

*Bletz v. Gribble*,
  641 F.3d 743 (6th Cir. 2011)                          5

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)                                        7

*Hedgepath v. Pelphrey*,
  520 F. App'x 385 (6th Cir. 2013)                    7

*Kyles v. Whitley*,
  514 U.S. 419 (1995)                                        6

*Maryland v. Pringle*,
  540 U.S. 366 (2003)                                    5, 6

*Odom v. Wayne Co.*,
  482 Mich. 459 (2008)                                     4

*Rudolph v. Babinec*,
  939 F.3d 742 (6th Cir. 2019)                        5, 4

*Swierkiewicz v. Sorema N. A.*,
  534 U.S. 506 (2002)                                    1, 5

*United States v. King*,
  227 F.3d 732 (6th Cir. 2000)                       2

*Walsh v. Taylor*,
  263 Mich.App. 618, 689 N.W.2d 506 (2004)      5

*Ybarra v. Illinois*,
  444 U.S. 85 (1979)                                        6

Statutes

Title 28 U.S.C. § 1983                                    5

## CONCISE STATEMENT OF THE ISSUES PRESENTED

I.     Whether the Complaint contains a short and plain statement of the claims showing that the pleader is entitled to the relief sought.

II.    Whether the Plaintiff's claims are based on a violation of his Fourth Amendment protections to be free from arrest, detainment, and prosecution unless his warrant is properly based on probable cause.

III.   Whether the actions of the government officials named in the complaint failed to operate ministerial duties, which is not entitled to Qualified Immunity.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).

*Maryland v. Pringle*, 540 U.S. 366 (2003).

*Rudolph v. Babinec*, 939 F.3d 742 (6th Cir. 2019).

**ARGUMENT**

I.  **THE COMPLAINT PRESENTS FAIR NOTICE OF THE CLAIMS AGAINST THE DEFENDANTS.**

Federal Rules of Civil Procedure require "a short plain statement of the claim showing that the pleader is entitled to relief." FCRP, Rule 8(2). The Supreme Court in *Twombly* explained that to avoid dismissal for failure to state a claim, a complaint must be sufficient "to give a defendant fair notice of the claims against him." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The Supreme Court also said that requiring a "heightened pleading standard" beyond "short and plain statement of the claim" conflicts with Rule 8. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly,* 550 U.S. at 556. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.*

A.  <u>**Investigators moved forward without investigating the veracity of the CI's claims.**</u>

The circumstances giving rise to the present controversy are  based on the investigators intentionally omitting any independent investigation into the veracity of the claims brought forth by the Confidential Informant (CI). The arrest warrant

1

that issued was not supported by probable cause, and the Michigan State Police (MSP) Troopers were a large part of the "investigation" leading to Al Jessup's wrongful arrest and prosecution .

In this case, Defendants relied on a CI's identification of Jessup without independent police investigation to verify the truth of the CI's claim. Plaintiff's complaint outlines how Michigan State Police based their investigation on the word of the CI without any follow through to determine whether any information provided to them was based on truth. The Defendants had a duty to conduct an independent police investigation into the allegations of the confidential informant, or at least to use a CI that is known to be reliable. This duty is ministerial. Their failure to investigate led to Plaintiff's wrongful arrest. "[T]he information presented [by an informant] must be sufficient to allow the official to independently determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *United States v. King*, 227 F.3d 732, 740 (6th Cir. 2000) (internal quotations omitted).

### B.   The controlled buys presented no information to lead investigators to independently identify any suspect.

Defendants  accompanied a confidential informant (CI) on two separate occasions in May 2018 to a controlled buy. According to Defendant Olson's report, Olson claims that he identified Jessup as the suspect through his SOS photo following a controlled buy. However, the report describes how he identified

2

Plaintiff based on a fleeting look at someone as they drove by in a moving vehicle. Defendants Olson and Durham did nothing meaningful to independently corroborate the CI's veracity.

During the first controlled buy, Defendant Olson observed a suspect approach in a black SUV. The police report claims that Plaintiff was the driver. The CI exited Olson's vehicle, approached the person in the passenger seat, and purchased heroin. The police report then describes that a woman, who was the seller, was in the passenger seat. The SUV is not registered to the Plaintiff. It is registered to Stephanie Duke. The above narrative presents the inference that the identification of the Plaintiff was improper, not reasonable, and was done with such indifference to the rights of the Plaintiff as to be a willful infliction of harm.

During the second controlled buy, the CI and Defendant Olson allegedly contacted Jessup through a cell phone number. The report does not contain information to support whether the number was checked to verify it in fact belonged to Jessup. Further, there is nothing that supports that the person on the other end of that phone call was Plaintiff other than the claim of the CI. Then, the CI, again alone, went into a party store where it purchased heroin. Defendant Olson again relied solely on the word of the CI that the person inside was Jessup without independently verifying this claim. The report then explains that their suspect got into a silver sedan, which is also not registered to Plaintiff. The Troopers assisting

3

in the surveillance of the controlled buy were then apparently unable to follow the sedan to verify the CI's claim.

The last time the report shows that an attempt to surveil Plaintiff selling narcotics is May 24, 2018. One year later, without any further investigation to support an arrest, a warrant was issued for the arrest of  Jessup, which was carried out by the Lansing Police Department (LPD).

Ultimately, the decision to arrest Jessup was based entirely on the word of the CI. The CI claimed that the person from whom he/she was purchasing his/her narcotics, without any independent investigation, absent the lab report confirming that the CI was in fact purchasing heroin.

Candidly, the claims asserted against the Ingham County defendants are stronger than those asserted against most of the MSP defendants. The only incident report ever generated from the "investigation" into "Jessop" is from Nathan Olson. Because this case was over before testimony could ever be taken, it's candidly quite difficult to understand the Troopers' precise role in the "investigation." What is clear from Olson's report, however, is that the MSP Troopers were involved in some manner. Durham participated in both controlled buys alongside Olson. Durham was involved in providing the CI with buy money, transporting the CI, and searching the CI both before and after the buys.

4

The remaining Troopers are listed as witnesses in the felony complaint against Jessup and as being "involved" in Olson's incident report. For the first buy, Olson states, "TCM detectives conducted surveillance on the CI and/or UC prior to, during and after the controlled purchase." TCM stands for Tri-County Metro, a drug-crime task force involving MSP, LPD, and the Eaton, Clinton, and Ingham Counties' Sheriff's Offices. The natural conclusion is that the TCM detectives referred to are the Troopers listed elsewhere in the report. Those same TCM detectives followed the suspect vehicle a short ways after the buy. The second controlled buy was almost identical except as to the location.

To the extent the allegations in the complaint come across as "threadbare," had any of the named defendants other than Olson authored an incident report, then perhaps Jessup could more precisely argue his claims (and perhaps the defendants could better defend against them). What is clear, though, is that each of the named defendants—including those who were only named a single time in the initial complaint—were meaningful participants in a shoddy investigation. Their lack of testimony and failure to document their actions should not work to their benefit.

Even still, the complaint gives each defendant plenty of notice about what claims they're to defend against and what actions they undertook that may ultimately make them liable. Paragraphs 26 and 38 allege that the law-enforcement officers who conducted surveillance were potentially already-named defendants.

5

From context, it was clear that this meant every officer involved who weren't Durham and Olson. Other allegations demonstrate that the investigation was poorly done and that there was never probable cause to believe Jessup was the person they actually wanted.

As the moving defendants note, Jessup is careful to articulate which claims apply to each party and why. Br. in Support, ECF No. 5, PageID.39. As to the moving defendants, Jessup argues that they are liable for Counts I–IV and VII–IX. For Counts I–IV, Jessup specifically refers to allegations in paragraphs 56-60 to form the factual basis for the legal claims he's making. Essentially: the law-enforcement defendants all did a very bad job at investigating and did not have probable cause. Counts VII–IX similarly allege that all the law-enforcement defendants did a very bad job by relying on an unreliable CI and therefore are responsible for those claims. Jessup is admittedly very to-the-point in his complaint, but briefly stating a claim is not the same thing as failing to state it.

The investigators' willful omission of an independent investigation of the CI's claims is "such [an] indifference to whether harm will result as to be a willingness that it does." *Rudolph v. Babinec*, 939 F.3d 742, 753 (6th Cir. 2019) (internal quotations omitted) (citing *Odom v. Wayne Co.*, 482 Mich. 459, 474 (2008)). The facts above provide fair notice to the defendants of the claims against them. Further, the factual allegations in the complaint raise a right to relief above

6

the speculative level and "state a claim to relief that is plausible on its face."

*Twombly,* 550 U.S. at 555, 570.

As outlined above, the circumstances of the arrest warrant, based on a

grossly inadequate investigation, led to the violation of Plaintiff's Fourth

Amendment rights.

Title 28 U.S.C. § 1983 states:

> Every person who, under color . . . of any State . . .
> causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or
> other proceeding for redress . . .

"The elements of false imprisonment are (1) an act committed with the intention of

confining another, (2) the act directly or indirectly results in such confinement, and

(3) the person confined is conscious of his confinement." *Id.* at 514 (citations and

internal quotation marks omitted). False imprisonment also requires that "[t]he

restraint ... occurred without probable cause to support it." *Bletz v. Gribble*, 641

F.3d 743, 758 (6th Cir. 2011) (citing *Walsh v. Taylor,* 263 Mich.App. 618, 689

N.W.2d 506, 513 (2004)).

Model Civil Jury Instruction 116.07, False Arrest – Arrest with Warrant

states, "An arrest is lawful if defendant made such arrest pursuant to a warrant

naming [the plaintiff], and did not act in bad faith." The plaintiff's complaint puts

forth a "a short plain statement of the claim showing that" the warrant for

Plaintiff's arrest was issued in bad faith.

Probable cause is defined as "'a reasonable ground for belief of guilt,' and

that the belief of guilt must be particularized with respect to the person to be

searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting

*Ybarra v. Illinois,* 444 U.S. 85, 91 (1979)). "To determine whether an officer had

probable cause to arrest an individual, we examine the events leading up to the

arrest, and then decide whether these historical facts, viewed from the standpoint of

an objectively reasonable police officer, amount to probable cause." *Maryland v.*

*Pringle*, 540 U.S. 366, 371 (2003) (internal quotations omitted).

As described above, the Defendants named in the complaint were

responsible for the improper identification of the Plaintiff. The defendants acted

with such an indifference toward Plaintiff's liberty as to have acted deliberately.

The subsequent filing of the criminal complaint, based on an arrest devoid of

probable cause, was sufficient to initiate a claim for malicious prosecution.

Prosecution has a duty to know what police are doing in support of criminal

charges. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). All tort actions that follow

the unlawful arrest, detainment, and prosecution are proper in that the parties

named in the complaint failed to maintain their duty not to violate Plaintiff's

Fourth Amendment protections without probable cause to support the criminal charge.

## II.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

There is no basis for the government officials in this action to claim qualified immunity. Government officials acting within their "discretionary functions" are generally shielded from suit for civil damages in their individual capacity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The "ministerial" actions of officials are not generally protected and do not afford them qualified immunity. *Id.* at 816.

Discretionary duties involve "the exercise of discretion and judgment, or personal deliberation, decision, and judgment [in the performance of their duties]." *Hedgepath v. Pelphrey*, 520 F. App'x 385, 389 (6th Cir. 2013). Ministerial duties, however, require that officers act according to their duties and responsibilities, "when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* The actions of officers, however, are rarely ever purely discretionary or ministerial. When this is the case, the test to determine whether an action should qualify as discretionary or ministerial depends on the "dominant nature of the act and is inherently fact-sensitive." *Id.* (internal quotations and italics omitted).

Here, the plaintiff does not dispute the discretionary nature which investigations are certain to involve. The dominant nature of the act, here, is that the report indicates the complete indifference to and the lack of an independent investigation into the veracity of the CI's claims as to who it was purchasing heroin and cocaine. The issue here is not that the defendants could've done a better investigation, it's simply that the investigation performed was so bad that they might as well not have done one at all.  The most basic duty of an officer is to investigate, and this duty is ministerial and therefore not subject to a qualified-immunity defense. Even if the facts ultimately bear out that the MSP defendants are entitled to qualified immunity, it's too early in the game to make that conclusion now.

III.    DEFENDANTS ARE NOT ENTITLED TO GOVERNMENTAL
        IMMUNITY.

To be clear, as with qualified immunity or just about any other affirmative defense, it is not required that a plaintiff "plead an exception" to governmental immunity in a complaint. ECF No. 5, PageID.53. It is required, however, that a plaintiff "allege facts justifying the application of that exception." Id. Here, the moving defendants correctly note that the state torts alleged are not subject to the gross negligence standard and are thus only not liable when they are (1) acting

within the scope of their employment and authority, (2) acting in good faith, and
(3) performing discretionary acts, not ministerial ones.

The latter two of these requirements have already been argued
elsewhere in this response, but in short: the police are neither acting in good faith
nor performing discretionary acts when their investigation is so bad that it hardly
warrants being called an investigation in the first place. Because there are issues of
material fact on these two points, it's premature to conclude that the record
supports a finding of governmental immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests that the Court deny the

Defendants' Motion to Dismiss and allow this lawsuit to continue.

Dated:     June 23, 2021                    Dustyn Coontz (P80102)
                                            Attorney for Al Jessup
                                            1100 W. Saginaw Street
                                            Suite 4A
                                            Lansing, MI 48915
                                            (517)940-8004
                                            dc@coontzlaw.com