UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AL JESSUP,

    Plaintiff,

v.

NATHAN OLSON, et al.,

    Defendants.

_____/

Case No. 1:21-cv-232

Hon. Hala Y. Jarbou

# OPINION

This is a civil rights action asserting claims under federal and state law. Plaintiff Al Jessup claims that Defendant Nathan Olson, a deputy for the Ingham County Sheriff's Office, wrongfully identified him as a suspect in the sale of narcotics, leading to his prosecution and arrest. Plaintiff claims that Ingham County is also liable. Before the Court is these Defendants' motion to dismiss the complaint for failure to state a claim and/or for summary judgment. (ECF No. 22.) For the reasons herein, the Court will grant their motion and dismiss them from the case.

## I. BACKGROUND

**A. Facts**

The following is a summary of the facts of this case, construing the evidence in a light most favorable to Plaintiff. It is worth noting that, apart from a single court record indicating that the county dismissed the criminal case against Plaintiff, he offers no evidence to dispute Defendants' version of the facts.

In May 2018, Deputy Olson worked for the Ingham County Sheriff's Office and was assigned to the Tri-County Metro Narcotics Squad ("TCM"). (Olson Aff. ¶ 3, ECF 23-2.) Michigan State Police Detective Sergeant Ray Durham worked with Olson on that squad. (*See id.* ¶ 7.) On May 8, 2018, the two of them met with a confidential informant ("CI") previously

determined to be reliable by the TCM. (*Id.*) Olson himself had previously worked with this CI on eight controlled narcotics purchases "without any complications." (*Id.* ¶ 31.) The CI told Olson and Durham that he had arranged to purchase heroin and cocaine from a person he identified as "Jay." (*Id.* ¶ 8.)

Olson drove the CI in an undercover vehicle to a food market in Lansing, Michigan, and then parked in the parking lot. (*Id.* ¶ 9.) There, they saw an individual (later identified as Al Jessup) drive by in a 2014 black Buick Verano and turn north on Starr Avenue. (*Id.* ¶ 10.) Olson gave the CI some cash. The CI left the vehicle and then returned a short while later. He told Olson that he needed to meet the seller on Starr Avenue. (*Id.* ¶ 11.)

Olson and the CI drove to Starr Avenue and encountered the black Buick Verano driving in the opposite direction. (*Id.* ¶ 12.) Olson stopped his car twenty feet from the Buick and then the CI got out and approached the passenger side of the Buick. (*Id.*) The CI returned to Olson's vehicle with suspected heroin and cocaine.

TCM detectives followed the Buick and obtained its license plate number. (*Id.* ¶ 15.) They observed a male driver and a female passenger. Olson looked up the owner of the vehicle in state records and discovered that it belonged to Stephanie Duke. (*Id.* ¶ 16.) He looked up Duke's information in a police database and discovered that one of her "known contacts" was "Al Jessop." (Incident Rep., ECF No. 23-2, PageID.236; *but see* Olson Aff. ¶ 17 (identifying the contact as "Al Jessup").)

Olson then looked up the record for Plaintiff ("Al Jessup") and found his driver's license picture. (Olson Aff. ¶ 18.) Using this picture and his observation of the driver of the black Buick, Olson identified Plaintiff as the driver. (*Id.*) Olson also conducted a field test of the substances obtained by the CI and confirmed that they contained heroin and cocaine.

2

On May 24, 2018, Olson and the CI arranged another purchase of narcotics. (*Id.* ¶ 20.) Olson took the CI to a different store, where the CI said that he/she had arranged to purchase heroin from the same individual as before. (*Id.* ¶¶ 21-22.) Olson gave the CI some cash. The CI went inside the store and came out a short time later with suspected heroin. The CI said that he/she had given the suspect cash while they were inside the store, in exchange for heroin. (*Id.* ¶ 23.) Olson then showed the driver's license photo of Plaintiff to the CI, who confirmed that it depicted the suspect who sold narcotics to the CI on May 8 and May 24, 2018. (*Id.* ¶ 24.) Olson also conducted a field test of the suspected heroin and confirmed that it contained heroin with fentanyl or methamphetamine. (*Id.* ¶ 25.)

On October 19, 2018, Olson submitted a "warrant request" to the prosecutor's office for "two counts of delivery of heroin and one count of delivery of cocaine" against Plaintiff. (*Id.* ¶ 28.)

On February 7, 2019, Plaintiff was charged with three felony counts involving delivery of heroin or cocaine. (*See* Compl. ¶ 46, ECF No. 1.) Officers from the Lansing Police Department arrested Plaintiff on May 27, 2019. (*Id.* ¶ 47.) Plaintiff was arraigned the next day and released with a GPS tether. On June 6, 2019, the prosecutor moved for *nolle prosequi* and the court dismissed the case against Plaintiff. (*See* Motion/Order of Nolle Prosequi, ECF No. 24, PageID.280.) As support for the motion, the prosecutor wrote, "The People are unable to sustain our [burden of proof] at this time." (*Id.*)[1]

---

[1] Olson asserts that it is "his understanding" that the County dismissed the case because it could not locate the CI and could not serve him/her with a subpoena to appear for the preliminary examination. (Olson Aff. ¶ 30.) He does not provide the basis for this understanding, however, so the Court does not consider it.

3

### B. Procedural History

On October 29, 2021, this Court entered an opinion and order dismissing the defendants who work for the Michigan State Police. (ECF Nos. 20, 21.) The remaining defendants are the following: Defendants Olson and Ingham County; unidentified state or county police officers; and the CI.

### C. Defendants' Motion

Defendants Olson and Ingham County argue that Plaintiffs' complaint fails to state a claim against them and/or that they are entitled to summary judgment.

Plaintiff asserts ten claims in his complaint: false arrest under the Fourth Amendment (Count I); false arrest under Michigan law (Count II); false imprisonment under Michigan law (Count III); malicious prosecution under the Fourth Amendment (Count IV); statutory malicious prosecution under Michigan law (Count V); common law malicious prosecution (Count VI); intentional infliction of emotional distress (Count VII); invasion of privacy – intrusion (Count VIII); invasion of privacy – false light (Count IX); and slander (Count X). Counts V, VI, and X are asserted only against the CI.

## II. STANDARDS

### A. Dismissal - Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough

4

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### B. Summary Judgment - Rule 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III. ANALYSIS

### A. Conceded Claims

Plaintiff concedes that the "County Defendants" are not liable for "any theory of false arrest" because such a claim "can only be made against the officers who physically make the arrest." (Pl.'s Resp. 5, ECF No. 24.) Accordingly, the Court will dismiss Counts I and II against Defendants Olson and Ingham County.

In addition, Plaintiff does not contest the dismissal of Counts VII, VIII, and IX, so the Court will dismiss those claims against these Defendants as well. (*See id.*)

Finally, Plaintiff concedes that he cannot state a claim for slander against the CI, so the Court will dismiss Count X. (*See id.*)

The remaining claims against Defendants Olson and Ingham County are in Counts III and IV, which the Court will address in reverse order.

### B. Count IV – Malicious Prosecution (Fourth Amendment)

#### 1. Defendant Olson

In Count IV, Plaintiff asserts a claim for malicious prosecution under the Fourth Amendment. "[T]he Fourth Amendment does not adopt separate bans on 'false arrests,' 'false imprisonments,' and 'malicious prosecutions.' It establishes a singular ban on 'unreasonable' 'seizures.'" *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160-61 (6th Cir. 2021) (quoting U.S. Const. amend. IV). "[T]his uniform ban bars all pretrial detentions without probable cause to believe that a detainee has committed a crime . . . ." *Id.* at 1161 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 917-20 (2017)). "Probable cause exists where the 'facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing . . . that the suspect committed, is committing, or is about to commit an offense." *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

> To prevail on a malicious prosecution claim, Plaintiff must prove the following:
>
> (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the prosecution, the plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Buchanan v. Metz*, 647 F. App'x 659, 666 (6th Cir. 2016).

Plaintiff's claim fails on the probable cause prong. It is undisputed that both the CI and Olson identified Plaintiff using his picture. Their eyewitness identification of Plaintiff as the seller of narcotics was sufficient to establish probable cause.

Plaintiff attempts to discredit the reliability of the CI by suggesting that there were three individuals involved in the eight controlled buys conducted by Olson and the CI before May 2018, and that only one of those individuals had been charged with an offense by the time Olson and the TCM determined that the CI was reliable. However, Plaintiff cites no case law suggesting that charges against more than one individual are necessary to buttress the reliability of an informant. Indeed, "'[e]vidence substantiating an informant's reliability . . . may be any set of facts that support the accuracy of the information supplied by the informant,' including an officer's first-hand observations or investigation, . . . or the informant's reliability in prior investigations." *United States v. Smith*, No. 21-1457, 2022 WL 4115879, at *5 (6th Cir. Sept. 9, 2022) (quoting *United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005)). Here, Olson attested to the CI's reliability based on his work with the CI in eight prior controlled purchases. And as Plaintiff indicates, one of the individuals involved in those purchases was charged with an offense. Also, Olson and the CI both identified Plaintiff as the seller using Plaintiff's picture. These facts are more than sufficient to satisfy probable cause.

Plaintiff asserts that he "cannot tell the Court what the CI's basis of knowledge was" (Pl.'s Resp. 7), but Olson's affidavit establishes that the CI interacted directly with the seller and then

7

confirmed that the seller's appearance matched that of Plaintiff. Those interactions, one of which Olson observed, were the basis for his knowledge.

Plaintiff criticizes Olson for failing to corroborate Jessup's identity apart from showing his picture to the CI, but Plaintiff ignores the fact that Olson himself also matched the driver of the Buick with Jessup's picture. No further corroboration was necessary to establish probable cause.

Furthermore, as Defendants note, there is no evidence that Olson acted with an improper purpose. At most, the evidence suggests that Olson may have acted negligently (if, in fact, he identified the wrong person), which is not sufficient to establish a malicious prosecution claim under § 1983.

> For a police officer to participate in a prosecutor's decision to charge a suspect, our cases suggest that the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating. To distinguish between affirmatively aiding the prosecution and passively participating in it, we have relied on an officer's blameworthiness. If, for example, an officer made deliberate or reckless falsehoods to a judge in order to initiate the criminal proceedings, the plaintiff can pursue a Fourth Amendment malicious-prosecution claim against the officer. If, by contrast, the officer's false statement rested on negligence or an innocent mistake, the plaintiff cannot do so.

*Lopez v. Foerster*, No. 20-2258, 2022 WL 910575, at *4 (6th Cir. Mar. 29, 2022) (quotation marks and citations omitted). Here, no evidence indicates that Olson intentionally or recklessly identified the wrong person as the suspect.

In short, because Plaintiff has not shown the absence of probable cause (or a genuine dispute of fact regarding its existence) or conduct by Olson that is more blameworthy than negligence, Defendant Olson is entitled to summary judgment on Count IV.

### 2. Ingham County

Ingham County "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [42 U.S.C.] § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, Ingham County may

8

only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020). The policy or custom must be the moving force behind the constitutional injury, and Plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman*, 974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

The Court of Appeals for the Sixth Circuit has not decided whether a municipality can be liable under § 1983 in the absence of liability for any individual defendant. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 900-01 (6th Cir. 2018). Nevertheless, Plaintiff's claim fails because he does not identify a policy or custom of Ingham County or indicate how that policy or custom was the cause of his injury. He simply asserts that "[t]he policy and customs of MSP allowed for Olson and [Ingham County Sheriff's Department] to employ and rely on a bad CI, which ultimately led to [Plaintiff's] unlawful prosecution." (Pl.'s Resp. 22.) This conclusory assertion is not sufficient to survive a motion for summary judgment. Accordingly, the Court will dismiss Count IV against Ingham County.

### C. Count III – False imprisonment under Michigan law

Plaintiff's failure to show an absence of probable cause also renders his false imprisonment claim in Count III meritless. "'To prevail on a claim of false arrest or false imprisonment, a

9

plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause.'" *Barbour v. City of Detroit*, No. 355866, 2021 WL 5504194, at *4 (quoting *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003)). Because probable cause existed to arrest and prosecute Plaintiff, the Court will also dismiss his false imprisonment claim against Defendants Olson and Ingham County.

In summary, Defendants Olson and Ingham County are entitled to dismissal of all claims against them.

## IV. REMAINING DEFENDANTS

After dismissal of Defendants Olson and Ingham County, the only remaining defendants are unidentified state/county law enforcement officers and the confidential informant. (*See* Compl. ¶¶ 8, 14, ECF No. 1.) Because Plaintiff has not identified these additional officers, and because the Court has dismissed all claims against the other officer defendants in this action, the Court will dismiss the unidentified officers as well. The reasons for dismissal of the named state and county law enforcement officers would apply to the unnamed officers as well. Plaintiff does not even mention the unidentified officers in the body of his complaint, so there is no identifiable basis for a viable claim against them.

That leaves Plaintiff's claims against the confidential informant in Counts I to IX. Plaintiff has not identified or served his complaint on this individual, even though the deadlines for completing discovery and amending the complaint have passed. (*See* Case Management Order, ECF No. 15.) Accordingly, the Court will enter an order requiring Plaintiff to show cause why the Court should not dismiss the confidential informant and enter judgment in this matter.

## V. CONCLUSION

For all the foregoing reasons, the Court finds that Olson and Ingham County are entitled to dismissal of Plaintiff's claims against them. The Court will grant their motion for dismissal and/or

10

for summary judgment and dismiss them from the case. The Court will also dismiss the unidentified law enforcement officers and Count X of the complaint. Finally, the Court will require Plaintiff to show cause why the Court should not dismiss the confidential informant.

An order will enter consistent with this Opinion.

Dated: September 21, 2022         /s/ Hala Y. Jarbou
                                  HALA Y. JARBOU
                                  CHIEF UNITED STATES DISTRICT JUDGE